[S. F. No. 13954. In Bank.—June 27, 1931.]

NEW YORK INDEMNITY COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, CLAUDE EUSTACE et al., Respondents.

E. Herbert Herlihy, F. George Herlihy, Flint & MacKay, H. S. MacKay, Jr., and Edward L. Compton for Petitioners.

Edward O. Allen for Respondents.

B. E. Pemberton, Henry G. Sanford, John Francis Neylan, Grove J. Fink, Lawler & Degnan, Alexander T. Sokolow and John M. Hall, *Amici Curiae*.

THE COURT.—A rehearing was granted in this proceeding after decision by this court affirming the award of the Industrial Accident Commission in order to devote further consideration to the somewhat novel question presented herein, in view of the very earnest and able briefs and argument of counsel for both parties and of the several *amici curiae*, discussing *pro* and *con* the issues involved in this inquiry. The original applicant for an award before the Industrial Accident Commission was one Claude Eustace who, while of the age of thirty-four years, was within the numerous class known as "newsboys", and who at the time he received the injuries for which he sought compensation was engaged in selling the daily issues of the "Los Angeles Evening Herald" and of the "Los Angeles Record" upon the streets of the city of Los Angeles. He was injured in the act of selling one or other of the instant issues of said

newspapers to a passing customer in an automobile, having run out into the street for the purpose of making such sale, where he was struck and injured by another passing machine. The facts with reference to said injuries and with reference to the calling in which he was engaged at the time thereof and to the relation which he bore in the course of said calling to the publishers respectively of said newspapers were practically undisputed. The sole question presented to the Industrial Accident Commission and to this court is the question of law as to whether, by virtue of his said relation to them and each of them, he came within the category of a compensable employee within the meaning and intent of the Workmen's Compensation Act, so as to be entitled to an award for his injuries, or whether at the time thereof he occupied the relation of or analogous to that of an independent contractor in the vending of said newspapers so as not to be entitled to an award under the provisions of said act. The preliminary facts may be briefly stated. Eustace had for some time prior to his injuries been accustomed to have delivered to him from a district manager, acting as the representative of both publishing companies in the daily distribution of their respective issues to the newsboys within the district of which he was in charge, the newspapers of said companies. As to the "Herald" each of these newsboys, including the applicant, paid two cents each for the daily issues of said newspapers, said payments to be made either at the time of receiving the specified number of papers, or at the close of the sales for the day. Eustace was accustomed to take 130 "Heralds" for each day. Any unsold portion thereof was not returnable. As to the "Record", Eustace received as few or as many as he ordered, at the above price, and credit was given to him for returned copies thereof. The daily relations between Eustace and the publishers were created through his contact with the district manager. He was not upon the pay-roll of either publisher and received no salary or compensation directly from either. His daily profits, if any, consisted in the difference between the price paid or to be paid by him for the papers received and the price at which he was permitted by the publishers to sell the same to the purchasing public. There was some dispute in the evidence as to just what amount of control or regulation was exercised over newsboys by the

district manager; but the evidence in that regard seems to go no further than the following extent, to wit: That certain specified corners or places upon the public streets were allotted, when unoccupied, to particular newsboys applying for the same, who received instructions from the district manager not to intrude upon or interfere with the corner or place allotted to another. Each particular newsboy was expected and in fact required to be active and vigilant in making sales of a prescribed minimum number of each of said newspapers at or near his designated place; in short, to be a "hustler" in making sales. Otherwise his allotted place or corner would be given to another newsboy and he would be refused further copies by the district manager. The latter testified that one of his duties as such district manager in the employ of both publishers was to maintain a status of peace and harmony among the newsboys, and to so far supervise their daily conduct in the territory covered by his district as to promote the sale of the largest possible number of copies of each of said newspapers within the said district.

The sole question presented to the Commission for its determination in making or in refusing to make an award to Eustace, and presented for our consideration in reviewing the award which the Commission made, and in determining whether or not, in view of the practically undisputed facts, the Commission had jurisdiction to make such award, was and is as to whether upon the facts above set forth it could be legally determined that Eustace at the time of his injuries occupied the relation of an employee of said newspaper publishers, respectively, and of their and each of their insurers, so as to render him entitled to compensation in his proceeding before the Industrial Accident Commission.

It cannot, we think, be seriously contended upon the basis of the foregoing undisputed facts that the relation of master and servant existed between Eustace and the publishers of said newspapers as that relation is defined and limited by the provisions of section 2009 of the Civil Code of California, which provides that: "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." Nor do we think that, eliminating for the moment the question of control, it

can be fairly concluded that under the provisions of section 8a of the Workmen's Compensation Act, giving it its most liberal interpretation, Eustace could be held to have become and been at the time of his injuries an employee of said newspaper publishers. Section 8a of said act provides: "The term 'employee' as used in sections six to thirty-one, inclusive of this act shall be construed to mean: Every person in the service of an employer as defined in section seven hereof under any appointment or contract of hire or apprenticeship, express or implied, oral or written." The undisputed evidence discloses that aside from the question of control the relation created by the daily series of contacts between Eustace and the newspaper publishers, through their legal representative, the district manager, while somewhat difficult of definition as that of an independent contractor, was more nearly allied to the relation of a sales agent, under the authorities to which we have been cited, than to that of an employee and employer as these terms are defined in the Workmen's Compensation Act. (See *Piper* v. *Oakland Motor Co.,* 94 Vt. 211 [109 Atl. 911]; *Poirier Mfg. Co.* v. *Kitts,* 18 N. D. 556 [120 N. W. 558]; *Sinnet* v. *Watkins,* 214 Ky. 76 [282 S. W. 769].) Nor do we think that there is a sufficient analogy between the facts involved in this proceeding and those existing in the case of *Globe Indemnity Co.* v. *Industrial Acc. Com.,* 208 Cal. 751 [284 Pac. 661], to justify its application to the case at bar, since in that case the evidence showed that an express relation of agency for the distribution of the daily issues of the "Oakland Tribune" to its subscribers in San Rafael existed between the applicant for an award and the publishers of said newspaper, in pursuance of which the applicant not only received a percentage of the monthly price which the subscribers paid, but was also paid a regular sum in addition thereto to cover the cost of distribution in outlying territory. The evidence in that case disclosed that the relationship thus created was that of a month to month relationship rather that a daily renewed situation such as existed in the instant case, and with a much larger degree of control than that which is presented in the instant proceeding. A somewhat similar situation was presented to the Industrial Accident Commission in the matter of *Servel* v. *Chronicle Pub. Co.,* 6 I. A. C. 23, wherein it appeared that the newsboy selling

papers for the "San Francisco Chronicle", in addition to a profit of two and one-half cents received by him upon the sale of each copy of said newspaper, was paid the sum of $2.50 weekly by the publishers thereof for selling their newspaper exclusively upon a definite corner. The commission in that proceeding held that "except for the payment for 'hustling' applicant was on the same footing as any other vendor of merchandise who buys goods to sell for profit and who assumes the risk of loss, and therefore in this respect was an independent contractor and not an employee; but that inasmuch as the defendant had paid him a definite sum for securing his exclusive services each morning, the arrangement constituted a contract of hire, and therefore the applicant should be considered as an employee in respect to any injury which might occur while selling defendant's papers." This case, while in no sense binding upon this court, is persuasive with relation to what the previous attitude of the Industrial Accident Commission for the last ten years or more has been with regard to what may be described as "newsboy cases".

We are thus brought to what we deem to be the essential inquiry in the instant proceeding, which is as to whether the nature and degree of control exercised by the publishers of the two newspapers involved in this proceeding, through their district manager, was such as would suffice to justify the finding of the Commission to the effect that newsboys, by virtue of such control, stood in the relation of employees of the publishers of said newspapers, and as such have a compensable claim for an award arising out of injuries received in the distribution to the public at large of their daily product. In the case of *Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 Pac. 570], it was held by this court that the essential test by which to determine whether in doubtful cases the relation between a workman and those for whom he was rendering service was that of an employee or of an independent contractor, was not so much dependent upon whether he received wages or whether he was to devote all or a portion of his time to the performance of his specified service, but was rather dependent upon the extent of control or right of control which the so-called employer was to exercise over its so-called employee. When we undertake to apply the reasoning of that case to the admitted facts of the

instant proceeding we are constrained to hold that the limited amount of control which the publishers of these two newspapers undertook to exercise over the newsboys, including Eustace, who daily purchased from their district manager a specified number of copies of their daily issues for a specific sum, payable in cash or at the close of each day's sales, and who undertook the retailing of the same to such customers among the public at large as they were able to attract or procure at a specified place and price fixed by the publishers, would not as a matter of law be sufficient to constitute such newsboys the employees of the publishers of said newspapers so as to entitle them to receive compensation at the hands of the Industrial Accident Commission in the event of injuries received by them in the course of their activities in making or attempting to make individual sales of the copies of said newspapers. We are satisfied that the finding of the Commission upon the undisputed facts presented before it amounted to an erroneous legal conclusion which this court possesses jurisdiction to review.

The petitioners herein, both through their counsel and through the aid of *amici curiae,* have presented much plausible argument as to the effect of upholding the legal conclusion and award of the Commission upon the numerous army of more or less irresponsible persons of immature years, of physical infirmities, and of failure in other vocations, who come at length within the classification of newsboys in the far-flung daily or periodical distribution of newspapers and other periodicals to the public at large. The impossibility in the main of exercising any more than a very limited supervision or control over this promiscuous and ever-changing body of assorted individualities occupied from day to day in the vocation known by the title of ''newsboys'' has been plausibly urged as a reason why the legislature in the adoption and limited application of the Workmen's Compensation Act could not have intended. to embrace within its terms this promiscuous and in a sense large irresponsible class of persons, and that to impose upon the publishers of newspapers and other periodicals responsibility for their individual mischances while pursuing such vocation would work disaster to a very large number of persons who now receive a measure of their livelihood in the retailing of newspapers and other publications, but with respect to

whom such publishers could not in reason be held to assume the responsibilities arising out of the established relation of employer and employee. While the foregoing course of reasoning could not be held to be conclusive in determining whether or not such a relation in. clear cases existed, it is persuasive in such doubtful cases of asserted jurisdiction as those wherein, as in the instant proceeding, the Commission has undertaken as a legal conclusion from undisputed facts to make and to uphold an award. We are of the opinion that it fell into error in so doing in the instant case and that as a consequence its award to the original applicant herein should be and the same is hereby annulled.