JACK L. PIANTANIDA, PETITIONER-APPELLANT, v. RUS-
SELL BENNETT, RESPONDENT-RESPONDENT.

Argued January 3, 1955—Decided January 24, 1955.

*Mr. Henry H. Patterson* argued the cause for the appellant (*Messrs. Patterson & Cooper*, attorneys).

*Mr. Raymond L. Cunneen* argued the cause for the respondent.

The opinion of the court was delivered by

OLIPHANT, J. This is a workmen's compensation case in which the sole issue is whether at the time of his accident

the plaintiff was an employee of the defendant or an independent contractor.

Plaintiff recovered an award in the Workmen's Compensation Division, which, on appeal was affirmed by a judgment entered in the Monmouth County Court. On further appeal the Appellate Division of the Superior Court reversed the judgment entered below and on the plaintiff's petition we granted certification. 16 *N. J.* 191 (1954).

Plaintiff, for a number of years, had operated a landscaping and excavating business under the trade name of "Shore Landscaping Service" and had business cards in that name. In that business he contracted for work on either the lump sum or hourly basis. His equipment consisted of a pick-up truck, a dump truck, a caterpillar-tractor type bucket-loader which evidently is a bulldozer with loading equipment, and the "hand tools necessary to the trade." He performed all his work himself and operated his own machines.

Some time prior to May 21, 1952 plaintiff noticed that a building in Freehold was being demolished and that there was a lot of refuse and debris around the premises. He left his business card there with one of the workmen and indicated to him he would be available when it came time to clear the debris. A few days prior to the aforementioned date the defendant telephoned plaintiff and asked him about his machinery and charges. Plaintiff replied that he "charged $8.00 an hour * * * the price prevailing for that size loading units" including the operator, in this case the plaintiff. He began work on May 21, 1952. By mutual agreement he was to be allowed to attend to other business one or two days a week.

Defendant was employing two men on the job, one named Lopez, who was in charge of the work, the other a relative of defendant, but Bennett, the defendant, was seldom there. Lopez told plaintiff "what to do more or less," namely what was salvage and what was to be loaded on the truck and instructed him to stop loading when he, Lopez, saw the truck was sufficiently filled. Subsequently Lopez was transferred to other work and his place was taken by one Fitz-

patrick. In demolishing the walls of the old building plaintiff and Lopez or Fitzpatrick jointly used a timber to push the walls down with plaintiff's loader and either Lopez or Fitzpatrick would signal to the plaintiff when the loader was to be moved forward. The method of operating the machine itself was left to the plaintiff.

On June 10, 1952 plaintiff was filling his bucket with debris at a point about 25 feet from a section of wall which was still standing when it buckled and fell, some of it striking the plaintiff and injuring him.

In the actual doing of the work at the job full control in the manner of doing the work was retained by the defendant. Plaintiff would be shown a pile of debris out of which salvagable material had been culled by the defendant, and he would be directed to lift it into trucks supplied by the defendant. Plaintiff had no control over what debris was to be loaded first, where his operations should take place, or when to consider a truck loaded. In knocking down walls his efforts were directed by defendant's employees. The defendant was always in a position to tell plaintiff what he wanted done and could discharge him at any time.

In addition, defendant made deductions from plaintiff's bills, which were rendered on "Shore Landscaping Service" bill heads, for social security, unemployment compensation contributions and withholding tax. This was all done by defendant's mother, his bookkeeper, at his direction. The defendant reported plaintiff's injuries to his insurance carrier, in which he referred to him as "an employee." He testified he did all this after the accident because of a telephone call from plaintiff's brother insisting that he was an employee, but to us this is not persuasive.

In cases of this type, where the nature of the employment relationship is brought into question, they must be resolved by a balancing of the various elements presented by the entire complex of facts with which the court is confronted. The element of control is the one most stressed in the cases.

■■ The determining rule was laid down ·by· Justice Wachenfeld for this court in *Wilson v. Kelleher Motor Freight Lines, Inc.*, 12 *N. J.* 261 (1953), where we said:

"The relationship of master and servant exists 'whenever the employer retains the right to direct the manner in which the business (work) shall be done, as well as the result to be accomplished, or in other words, not only what shall be done, but how it shall be done * * *,'" citing *Cappadonna v. Passaic Motors Inc.*, 136 *N. J. L.* 299 (*Sup. Ct.* 1947).

"An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods and without being subject to the control of his employer as to the means by which the result is to be accomplished but only as to the result of the work", citing *Errickson v. Schwiers Co.*, 108 *N. J. L.* 481 (*E. & A.* 1932).

The *Errickson* case has elements similar to the facts of the instant case. That case involved the renting of a derrick from a company which also furnished the operator. The manager of the hiring company pointed out where the hoisted lumber was to be deposited, other employees determined the amount of the bundle and one of these men signalled to the man operating the derrick when to start to raise the bundle. It was held that the man operating the derrick was an employee of the hiring company rather than of the owner of the derrick. *Cf. Brown v. Paterson Central Market Assn.*, 5 *N. J. Misc.* 1035 (*Sup. Ct.* 1927).

As to loading debris, clearly plaintiff was under the general direction of another employee of the defendant. He loaded at a spot indicated to him and loaded only such material as he was told to load. The loading stopped at the command of another employee. In the salvaging phase of the operations, the control of what was to be salvaged resided in employees of respondent other than the plaintiff. With relation to the demolition of the walls, Lopez or Fitzpatrick had full control as to placing the timber and the time for moving the loader forward.

■ We are convinced that what plaintiff did with his machine was controlled to a sufficient degree so as, in addi-

tion to the other facts stated, to denominate him an employee for purposes of workmen's compensation.

Because the loader was the property of the plaintiff and the defendant did not control the actual mechanical operation is not a decisive factor. If one had been hired for loading and salvaging debris and had furnished and used his own shovel or to help in demolition work and had furnished and used his own sledge hammer, such a person would be an employee. Because plaintiff came with a mechanized tool which could be operated "by most anyone" rather than hand tools, while a factor to be considered, does not constitute him an independent contractor. Here the defendant not only directed what should be done but in a large measure how it should be done and under the rule as laid down in *Wilson v. Kelleher Motor Freight Lines, Inc., supra,* spelled out the plaintiff as an employee.

Where the facts and inferences therefrom are reasonably debatable the question of the relationship existing between the parties is one for the trier of the facts. Both the Division of Workmen's Compensation and the County Court found for the plaintiff. The Appellate Division made no independent findings of fact but found as a matter of law that the plaintiff was an independent contractor. This was error under the posture of the proofs here. *Larocco v. American Chain & Cable Co., Inc.,* 13 *N. J.* 1 (1953).

The judgment is reversed and that of the Division of Workmen's Compensation reinstated.

*For reversal*—Justices OLIPHANT, BURLING, JACOBS and BRENNAN—4.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER and WACHENFELD—3.